IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JUAN RODRIGUEZ,              )
                       )
           Plaintiff,     )
                       )
vs                     )     Civil Action No. 20-1672
                       )
                       )     Magistrate Judge Dodge
CP DEVELOPMENT, INC., JIM POLANSKY     )
and JIM LYNCH,            )
                       )
          Defendants.    )

## MEMORANDUM OPINION

Plaintiff Juan Rodriguez ("Rodriguez") brings this action under a variety of civil rights statutes, alleging that he was discriminated against based on his race, national origin, age and disability and in retaliation for filing a charge of discrimination, culminating in the termination of his employment. Named as Defendants are his former employer, CP Development, Inc. ("CP Development") and his former supervisors, Jim Polansky and Jim Lynch.

Pending before the Court is Defendants' motion to dismiss. For the reasons that follow, their motion will be granted with prejudice with respect to Count Six and without prejudice with leave to amend as to Counts One, Four and Five. As to Count Seven, Rodriguez's claim against Defendant Lynch based upon the first charge of discrimination will be denied with prejudice. Defendants' motion to dismiss the remaining claims in Count Seven is granted without prejudice and with leave to amend. Defendants' motion to dismiss Counts Two and Three will be denied.

## I.  Relevant Procedural History

Rodriguez commenced this action on November 2, 2020. Federal question jurisdiction is based upon the federal civil rights claims asserted in the Complaint, 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction is asserted over the state law claim. 28 U.S.C. § 1367(a).

(Compl. ¶ 1.)[1] Rodriguez alleges claims of race discrimination in violation of 42 U.S.C. § 1981 (Count One); national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (Title VII) (Count Two); retaliation under Title VII (Count Three); age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34 ("ADEA") (Count Four); disability discrimination in violation of the Americans With Disabilities Act, 42 U.S.C. §§ 12101-12117 ("ADA") (Count Five); the Older Workers Benefits Protection Act ("OWBPA") (Count Six); and national origin discrimination pursuant to the Pennsylvania Human Relations Act, 43 P.S. §§ 951-63 ("PHRA") (Count Seven).

Defendants' motion to dismiss (ECF No. 8) has been fully briefed (ECF Nos. 9, 15, 18).

## II.   **Facts Alleged in Complaint**

CP Development owns and manages apartments and houses for rent in Pittsburgh, Pennsylvania. It offers 24-hour maintenance, seven days a week, with additional snow and ice removal, rubbish removal, and landscaping services. Rodriguez was hired by CP Development on February 23, 2015 after responding to an internet advertisement that CP Development was seeking a "Maintenance/Remodeler." Rodriguez was 63 years old at the time.

CP Development's employees are initially placed on a probationary period during which the employee is placed with a previously hired employee and assigned tasks to determine if the new employee can perform these tasks. Later, based upon need, these employees are assigned new or additional tasks within the gamut of maintenance needs. CP Development generally does not hire individuals based upon a specific skill set or require its maintenance workers to possess any training, certificates, or education in a maintenance field. (Compl. ¶¶ 9-12.)[2]

During his probationary period, Rodriguez was paired with several co-workers.

---

[1] ECF No. 1.
[2] ECF No. 1.

Rodriguez completed his probationary period and was given full-time employment. (*Id.* ¶ 18.)

All maintenance employees/technicians are governed by the same job requirements no matter which specific job an individual performs. CP Development does not maintain any analytic tool by which to judge different rules for each employment job task. (*Id.* ¶¶ 13-14.)

From the beginning of his employment until he was terminated, Rodriguez performed job duties in each of CP Development's work needs list, including plumbing, electrician, HVAC, and maintenance duties. Rodriguez perfected utilized other maintenance and building skills that were highly beneficial to the successful operation of CP Development. (*Id.* ¶¶ 15-16.)

Many of the maintenance tasks required more sophisticated skills than the routine skills mentioned in CP Development's job advertisement. Over time, Rodriguez and a co-worker were the only two "go to guys" on staff with sufficient skills and experience to work across all trades. A "go to guy" fills in when a job must be done immediately and the designated electrician, plumber/HVAC technicians, glazier and carpenter are not available. Rodriguez estimates that he completed between 75 and 85% of those jobs with no helper. (*Id.* ¶¶ 18-19.)

Rodriguez was the lowest paid employee on the maintenance staff. Despite his skill level, he was never paid at the same rate as similarly situated Caucasian co-workers or younger employees who performed substantially equivalent work. Rodriguez raised the issue of unfair pay with Jim Polansky in December 2018.[3] Shortly thereafter, Rodriguez received a very positive performance review. While his hourly wages were increased, Caucasian co-workers continued to be paid at higher hourly rates. Rodriguez later became aware of pay inequalities between himself and two white males and again spoke with Polansky. When he did not receive a response, Rodriguez requested a formal explanation for the pay disparity from Polansky. (*Id.* ¶¶

---

[3] Defendants indicate that his name is actually spelled "Polinsky." (ECF No. 9 at 2.)

20-21.)

In August 2019, Rodriguez received a second evaluation from Polansky and "Sekar B," another supervisor, and was offered a raise to $19.09/hour. He declined this pay increase because he would still receive less than comparable non-protected co-workers. In September 2019, CP Development unilaterally increased Rodriguez's hourly rate to $20.50. This was still less than that received by non-protected co-workers despite his job seniority, years of experience, and the fact that all workers performed the same or similar work. This disparity continued throughout Rodriguez's employment. (*Id.* ¶¶ 22-24.)

On or about September 3, 2019, Rodriguez filed a charge of discrimination against CP Development both with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC").[4] In connection with efforts to resolve this charge, CP Development demanded that Rodriguez resign from his employment but he declined to do so. CP Development then engaged in actions to force a resolution of the pending charge and Rodriguez's resignation. Beginning on October 16, 2019, Rodriguez's work was heavily scrutinized and questioned by Charlie Patterson, the owner of CP Development, as well as Lynch and Polansky. His work was often questioned about the amount of time taken to complete each job. These actions continued until he was terminated in July 2020. (*Id.* ¶¶ 25-28.)

Rodriguez's immediate supervisor during most of his employment was "Sekar B." In the winter of 2019-2020, Lynch and Polansky also became his supervisors. They established a newly

---

[4] Rodriguez did not provide the date of his first EEOC charge, but alleges that on October 3, 2019, he filed a second charge. Defendants have submitted the charges as exhibits to their motion to dismiss, which are dated September 3, 2019 and July 15, 2020, respectively. (ECF No. 9 Exs. A, B.) As explained below, Rodriguez does not challenge the authenticity of these documents and the EEOC case numbers match those of the Right to Sue Letters he attached to the Complaint. In addition, it is noted that the number assigned to his second charge includes the year 2020.

created position, "Basement Improvement Works," which they assigned to Rodriguez. This position required Rodriguez to work full-time in isolation during the winter in an unhealthy basement environment. Under the supervision of Lynch and Polansky, Rodriguez was informed that he would not have any assistance in completing tasks that involved heavy lifting even though they had been routinely assigned to two-person teams. Although he requested help with some of this work, Sekar B. informed him that management directed that he was required to complete all tasks on his own. (*Id.* ¶¶ 29-31.)  However, management had acknowledged throughout his employment that certain job duties required more than a single person to accomplish. (*Id.* ¶ 38.)

After Rodriguez contacted Polansky, a meeting with Sekar B., Polansky and an outside HR consultant took place. At this meeting, Sekar B. confirmed that management's direction that Rodriguez would not receive any assistance. Rodriguez "had no recourse but to officially request accommodations under the ADA." On February 20, 2020, he provided CP Development with a doctor's note regarding his requested accommodations, which included a limitation on lifting. The same day, CP Development falsely accused Rodriguez of insubordination with respect to the "Basement Works" assignment and issued a written warning to him. (*Id.* ¶¶ 32, 33, 35.)

Rodriguez was then given a list of the "essential functions" of his job to provide to his doctor. The list did not exist prior to that time and was created by the company under the direction of its newly hired human resources consultant. (*Id.* ¶¶ 36-37.)

Throughout the first half of 2020, CP Development continued to request that Rodriguez resign or retire in order to settle the pending EEOC charge. On June 22, 2020, Rodriguez rejected a "final" demand for his resignation. Two days later, Rodriguez was assigned to power wash/stain a wooden fire escape. When Rodriguez expressed concerns about the safety of this

structure, Sekar B. informed Rodriguez that the tenant was also concerned about its condition and he should proceed with the necessary repairs. Rodriguez did so and kept Sekar B. and Polansky informed of his progress. After Patterson was informed that Rodriguez had completed the repair, he came to the worksite to inspect the job on July 2, 2020. Rodriguez alleges that "without provocation," Patterson then "launched into a diatribe on the low quality of [Rodriguez's] work and lack of construction knowledge."

On July 9, 2020 Rodriguez was informed that he was terminated as of July 8, 2020. (*Id.* ¶¶ 39-43.)[5]

## III.   Discussion

### A.  Standard of Review

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[5] Rodriguez received a Notice of Right to sue letter from the EEOC with respect to his first charge on August 7, 2020. After his termination, he filed a second charge of discrimination with the EEOC on July 15, 2020. (ECF No. 9 Ex. B.) He requested a Notice of Right to Sue, which was issued by the EEOC on October 19, 2020. (Compl. Ex. C.) Rodriguez commenced this action on November 2, 2020.

544, 570 (2007)).

When dismissing a civil rights case for failure to state a claim, a court typically must allow a plaintiff to amend a deficient complaint, irrespective of whether it is requested, unless doing so would be "inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alston v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

As noted by the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged.

In ruling on a Rule 12(b)(6) motion, courts generally consider only the complaint, exhibits attached thereto and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). In addition, "[d]ocuments that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim." *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A)*, 768 F.3d 284, 291 (3d Cir. 2014).

Defendants attach to their motion the two Charges of Discrimination that Rodriguez filed. Although Rodriguez's charges are not "central to" his claims, some courts have permitted defendants to attach an EEOC charge to a motion to dismiss when a plaintiff references it in the complaint and does not dispute its authenticity. *See Lesoon v. Dejoy*, 2020 WL 7264067, at *1 (W.D. Pa. Dec. 10, 2020); *McCall v. Butler Health Sys./Butler Mem'l Hosp.*, 2013 WL 6253417, at *3 (W.D. Pa. Dec. 4, 2013).

Here, Rodriguez attached to the Complaint the Notices of Right to Sue (Compl. Ex. C) and references the charges in the Complaint (Compl. ¶¶ 2, 25-26, 28, 41, 52, 72-73, 75). He has not challenged the authenticity of the documents Defendants submitted. Thus, they may be considered without converting Defendants' motion to a motion for summary judgment. *Pension Ben. Guar. Corp. v. White,* 998 F.2d 1192, 1196 (3d. Cir. 1993).

B.  Section 1981 Claim

Defendants contend that Rodriguez's § 1981 claim in Count fails because this statute does not permit a cause of action for national origin discrimination. They also argue that Rodriguez does not allege facts plausibly showing "but-for" causation. Rodriguez counters that he has stated a claim for "Hispanic-race discrimination" and sufficiently alleges causation for purposes of this stage of the proceedings.[6]

As set forth in Section 1981:  "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts… to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens…." 42 U.S.C. § 1981(a). To prove a violation of Section 1981, a plaintiff must show that: (1) he is a member of a racial minority; (2) defendant intended to discriminate on the basis of race; and (3) discrimination occurred in relation to one or more activities enumerated therein. *Brown v. Phillip Morris,* 250 F.3d 789, 797 (3d Cir. 2011). "Although § 1981 does not itself use the word 'race,' the [Supreme] Court has construed the section to forbid ... 'racial' discrimination." *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987); *see id.* at 613 (finding that § 1981 protects against discrimination based on "ancestry and

---

[6] Count One is alleged against all three defendants. Unlike claims brought under Title VII, private individuals can be held liable for violating § 1981. *See Cardenas v. Massey*, 269 F.3d 251, 268 (3d Cir. 2001).

ethnic characteristics.")

A majority of district courts in the Third Circuit have dismissed Section 1981 claims that are based solely on national origin discrimination. *See, e.g., Reid v. Temple Univ. Hosp. Episcopal Campus*, 2017 WL 5157620, at *7 (E.D. Pa. Nov. 7, 2017)*; Wesley v. Palace Rehab. & Care Ctr., L.L.C.*, 3 F. Supp. 3d 221, 233 (D.N.J. 2014) (citing *Funayama v. Nichia Am. Corp.*, 2009 WL 1437656, at *4 (E.D. Pa. May 20, 2009) (collecting cases)). At the same time, courts in this Circuit have permitted § 1981 claims based on national origin *and* race, ethnicity or ancestry to proceed. *Mulholland v. Classic Mgmt., Inc.*, 2010 WL 2470834, at *2 (E.D. Pa. June 14, 2010); *see also Youssef v. Anvil Int'l,* 595 F. Supp. 2d 547, 558-59 (E.D. Pa. 2009). The Third Circuit has not yet decided this issue. *See Al-Khazraji v. Saint Francis College,* 784 F.2d 505, 514 n.11 (3d Cir. 1986), *aff'd*, 481 U.S. 604 (1987). It has noted, however, that a claim based solely on a plaintiff's national origin "would not be sufficient for a Section 1981 claim …." *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 172 (3d Cir. 1991).[7]

In Count One, which is described as a claim for "Hispanic-Race Discrimination," Rodriguez alleges that he is a member of the Hispanic race and was entitled to the rights and privileges extended to his white co-workers (Compl. ¶ 45). Within the same count, however, he asserts that he was discriminated against because of his national origin. (*Id.* ¶ 47.)

While Rodriguez is not required to exhaust his administrative remedies with the EEOC before proceeding with a Section 1981 claim,[8] his filings with the EEOC provide some further

---

[7] Some courts in other circuits have interpreted claims of discrimination against Hispanics as racial discrimination under Section 1981. *See, e.g., Village of Freeport v. Barrella*, 814 F.3d 594, 605 (2d Cir. 2016) (discrimination against Hispanics constitutes "racial discrimination" under § 1981); *Fonseca v. Sysco Food Serv.*, 374 F.3d 840, 850 (9th Cir. 2004) (allowing claim of racial discrimination based on plaintiff being "Hispanic" rather than national origin discrimination based on plaintiff being "Guatemalan").

[8] *See Gooding v. Warner-Lambert Co.*, 744 F.2d 354, 359 (3d Cir. 1984) ("The filing of a Title

insight. Defendants are correct that he does not check the "race" box on either form, but checks several other boxes, including "national origin," as the cause of discrimination against him. However, since he is not required to file an EEOC charge regarding a potential Section 1981 claim, his failure to identify racial discrimination is not dispositive of whether he has stated a Section 1981 claim in Count One of the Complaint.

At the same time, his allegations are a mixed bag that complicate resolution of this issue. In Rodriguez's first EEOC charge, which was submitted by his counsel, he indicates, among other things, that he is "Hispanic or Latino [Puerto Rican]," that this represents a protected class and that he was discriminated against because he is a Hispanic/Latino American. He also claims that he is a victim of ethnic discrimination. He indicates in the second charge, again submitted by counsel, that he was the subject of discrimination because he is Hispanic/Latino and because of his national origin.

Based on a review of Count One, it cannot be determined if Rodriguez contends that the alleged discrimination was based solely on his national origin, solely on his status as a racial minority, or alternatively, based both upon his national origin *and* race or ethnicity. *See* Compl. ¶¶ 45-47. Whether his use of the term Hispanic is a description intended to relate to race or to national origin is also unclear. Therefore, Defendants' motion to dismiss will be granted on this issue with leave to amend.

Defendants also contend that Rodriguez has failed to allege but-for causation with respect to this claim. The Supreme Court recently held that "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected

---

VII charge and resort to Title VII's administrative machinery are not a prerequisite for maintaining a section 1981 suit")

right." *Comcast Corp. v. National Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). In order to defeat a motion to dismiss, it is sufficient, but not necessary, to allege a prima facie case of discrimination. *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021). "The complaint need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" *Id.* (citation omitted). *See also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (establishing a prima facie case is an "evidentiary standard, not a pleading requirement.").

Rodriguez has alleged that he was paid less than similar situated non-Hispanic employees at CP Development. (Compl. ¶ 47.) While he also alleges that he was subjected to other discriminatory conduct, he does not allege that he attributes this less favorable treatment to being Hispanic. For that reason, he has failed to plead the necessary "but-for" causation.

Therefore, Defendants' motion to dismiss Count One will be granted. Dismissal will be without prejudice with leave to amend as it is not certain that amendment would be futile.

C.  Title VII National Origin Claim

Rodriguez asserts a Title VII claim based on his national origin in Count Two. He alleges that he was paid lower hourly wages than non-protected co-workers and when he complained about this issue, he was subjected to "conduct which created a hostile work environment, including, without limitation, over-monitoring of Plaintiff's work, assigning overly-burdensome employment tasks, and failing to provide work assistance. Rodriguez was subjected to scrutiny and held to a higher standard than the non-protected co-worker employees." He also alleges that he was subjected to retaliation and termination from employment. (Compl. ¶ 53.)

Pursuant to the provisions of Title VII, it is an unlawful employment practice for an employer to discharge or discriminate against any individual, inter alia, because of that

individual's race or national origin. 42 U.S.C. § 2000e-2(a)(1). In the Complaint, Rodriguez describes his Title VII claim as a national origin discrimination claim.[9] "The term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973) (footnote omitted).

In both EEOC charges, Rodriguez described himself as "Hispanic or Latino" and in the first charge, he also states that he is Puerto Rican. (ECF No. 9 Ex. A at 1, 2; Ex. B at 3.) Defendants argue that he has failed to allege his country of origin. However, they cite no authority that this is a necessary element of national origin discrimination. In fact, regulations and case law are to the contrary. *See* 29 C.F.R. § 1606.1 (EEOC guidelines define "national origin discrimination" "broadly as including, but not limited to, the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group"); 45 Fed. Reg. at 85633 ("In order to have a claim of national origin discrimination under Title VII, it is not necessary to show that the alleged discriminator knew the particular national origin group to which the complainant belonged.... [I]t is enough to show that the complainant was treated differently because of his or her foreign accent, appearance or physical characteristics"); *OMB Revisions to the Standards for the Classification of Federal Data on Race and Ethnicity*, 62 Fed.

---

[9] To the extent Rodriguez is attempting to assert a Title VII racial discrimination claim, Defendants assert that it has not been exhausted because he did not raise it in his EEOC charges. Title VII requires plaintiffs to exhaust administrative remedies prior to bringing suit in court by filing an administrative claim with the EEOC. 42 U.S.C. § 2000e-5(e)(1). A plaintiff's claim must thus fall "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996). While the claim is Count Two is not described as a claim for racial discrimination, the Court agrees that Rodriguez has not exhausted a claim for racial discrimination claim under Title VII against Defendants.

Reg. 36874, 36943 (July 9, 1997) ("Hispanic" is an ethnicity encompassing "person[s] of Mexican, Puerto Rican, Cuban, Central or South American or other Spanish culture or origin, regardless of race."). *See also  Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994); *Kanaji v. Children's Hosp. of Phila.*, 276 F. Supp. 2d 399, 401, 402 n.3 (E.D. Pa. 2003); *Lewis v. State of Del. Dep't of Pub. Instruction*, 948 F. Supp. 352, 360 (D. Del. 1996); *Muñoz v. Armstrong Flooring, Inc.*, 2019 WL 2357759, at *13 (E.D. Pa. June 4, 2019); *Sanchez v. Tricorp Amusements, Inc.*, 2010 WL 4923354, at *8 (D.N.J. Nov. 29, 2010).

Thus, Rodriguez's allegations are sufficient to state a claim for national origin discrimination. For that reason, Defendants' motion to dismiss Count Two will be denied.

D.  Retaliation Claim

In Count Three, Rodriguez alleges a claim of retaliation under Title VII. He asserts that after he complained about discriminatory practices, he was subjected to more arduous duties, retaliatory work assignments and ultimately, termination.

Title VII provides that it is an unlawful employment practice to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The prima facie elements of a retaliation claim are as follows: 1) the plaintiff engaged in activity protected by the anti-discrimination statute; 2) the employer took action that a reasonable employee would have found to be materially adverse in that it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination; and 3) there is a causal connection between the plaintiff's opposition to or participation in proceedings against unlawful discrimination and the employer's action. *Moore v. City of Philadelphia,* 461 F.3d 331, 341-42

(3d Cir. 2006).

In the absence of direct evidence of discrimination, a plaintiff may indirectly establish a prima facie case of discrimination by following the shifting burden analysis in *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). The *McDonnell Douglas* burden-shifting framework also applies to retaliation claims. *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007). However, as noted above, it is not necessary to allege a prima facie case to defeat a motion to dismiss. *Martinez,* 986 F.3d at 266. Rather, a plaintiff must plead "sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence" of the elements of Title VII retaliation. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

Defendants argue that none of the conduct cited by Rodriguez adequately supports a retaliation claim, noting that the fact that an employee's "title, office, reporting relationship and responsibilities may have changed" is insufficient to make reassignment an adverse employment action.  *Langley v. Merck & Co.*, 186 F. App'x 258, 260 (3d Cir. 2006). They further contend that allegations of being "over monitored" and assigned "difficult tasks" do not constitute adverse employment actions.

The Supreme Court has stated that in a retaliation case, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal citations omitted). Whether an employer's action would be material to a "reasonable worker" depends upon the particular worker's circumstances. The Court applied this test to find that a reassignment of a worker to a position with the same job description, but with less

desirable duties, was a materially adverse action. *Id.* at 70-71. *See also Conard v. Pennsylvania State Police*, 902 F.3d 178, 184 (3d Cir. 2018) (negative references can constitute retaliation); *E.E.O.C. v. Avecia, Inc.*, 151 F. App'x 162, 164 (3d Cir. 2005) (jury could conclude from employee's performance reviews, management's increased scrutiny of her, the tension with her co-workers and the termination letter that there was a causal link between her protected activity and the decision to fire her).

Rodriguez does not merely allege that his reporting relationship changed. He also alleges that he was required to individually handle work assignments that had previously been "two-person" projects. Thus, he was assigned "more arduous duties" and "retaliatory work assignments," matters which the EEOC has described as "a classic and widely recognized example of "forbidden retaliation." *Burlington Northern*, 548 U.S. at 71.

Rodriguez also alleges that he was terminated, the most obvious example of an adverse employment action. Defendants contend, however, that the characterization of his termination as retaliatory is undermined by the factual allegations of the Complaint.[10] According to Defendants, Rodriguez failed to allege that his termination was the "but-for" result of his EEOC charge because he pleads that he was terminated after his work was criticized.

Retaliation ultimately must be proved by but-for causation. *University of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338 (2013). However, "proving but-for causation as part of [the plaintiff's] ultimate burden of persuasion comes later, and not at the motion-to-

---

[10] Rodriguez also contends that each paycheck in which he received disparate pay constituted a separate and continuing event, such that the paychecks issued after his first EEOC charge could constitute adverse employment actions. Defendants suggest that this merely represents alleged ongoing harm, not a basis for a claim. Neither party has cited any authority with respect to this question. However, the Court need not resolve this issue at this time because as discussed, the remaining alleged events are sufficient to state a claim. *See Shaner v. Synthes*, 204 F.3d 494, 503 n.9 (3d Cir. 2000) ("a discrimination analysis must concentrate not on individual incidents, but on the overall scenario.")

dismiss stage." *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017).

Moreover, while Rodriguez alleges that the stated reason for his termination was the poor quality of his work, he also asserts that he was fired "without provocation." Without discovery, it is premature to conclude whether he was terminated for cause, that is, poor performance, or if the reason given was pretextual.

Defendants further contend that the ten-month period between his first EEOC charge and his termination is too attenuated to constitute a causal link, but Rodriguez contends that he faced "ongoing antagonism" during that time in the form of additional workload and criticism. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000) (plaintiff can demonstrate a causal link by pointing to ongoing antagonism).

Thus, based on a review of the allegations of the Complaint, Rodriguez has adequately stated a claim for retaliation. He pleads that he engaged in protected activity by filing a charge of discrimination, suffered adverse employment actions that ultimately culminated in his termination, and that there is a causal connection between these events. The facts, taken as true, raise an inference of discriminatory action. For these reasons, the motion to dismiss Count Three will be denied.

E.  ADEA Claim

Rodriguez asserts a claim of age discrimination under the ADEA in Count Four. Defendants contend that he cannot state a claim because he was hired when he was in his "mid-60s,"[11] he points to no ageist comments and he does not allege that he was replaced by a significantly younger employee. Again, they contend that he has not alleged that age was the "but-for" cause of his termination. *See Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167 (2009)

---

[11] *See Waldron v. SL Indus., Inc.*, 56 F.3d 491, 496 n.6 (3d Cir. 1995) (rejecting the argument that an employee who was hired at age 61 cannot assert a case of age discrimination.)

(age must be the but-for cause in a case under the ADEA).

Under *McDonnell Douglas*, as applied to claims under the ADEA, a plaintiff must plead and eventually prove that he: "(1) is a member of the protected class, i.e. at least 40 years of age, 29 U.S.C. § 631(a), (2) is qualified for the position, (3) suffered an adverse employment decision, and (4) in the case of a demotion or discharge, was replaced by a sufficiently younger person to create an inference of age discrimination." *Simpson v. Kay Jewelers, Sterling Div., Inc.*, 142 F.3d 639, 644 n.5 (3d Cir. 1998); *see also Burton v. Teleflex, Inc.*, 707 F.3d 417, 426 (3d Cir. 2013).

Rodriguez has alleged that he is over the age of 40, was qualified for his position and suffered an adverse employment decision because he was paid less than younger employees at CP Development. (Compl. ¶ 62). With respect to his termination, however, he has not alleged that he was replaced by a sufficiently younger person, and thus he has failed to state a claim for age discrimination with respect to his termination. *See Estopinan v. Lakeland Bus Lines, Inc.*, 2017 WL 4220330, at *3 (D.N.J. Sept. 22, 2017) (dismissing ADEA claim that failed to allege this element of the cause of action).[12]

Therefore, with respect to Count Four, the motion to dismiss will be granted without prejudice with leave to amend as it cannot be conclusively determined that amendment would be futile regarding his termination.

F.  ADA Claim

Defendants argue that in Count Five, Rodriguez fails to state a claim of disability

---

[12] Rodriguez's citation to *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996) misses the mark.  The Supreme Court held only that a plaintiff need not demonstrate that his replacement was under age 40. By contrast, Rodriguez must allege that he was replaced by a sufficiently younger person to state a claim based on his termination.

discrimination under the ADA because he failed to identify any disability or allege but-for causation.

To state a claim under the ADA, a plaintiff "must plausibly allege three elements: that he was disabled, was qualified for the job, and suffered discrimination because of his disability." *Gibbs v. City of Pittsburgh*, 989 F.3d 226, 229 (3d Cir. 2021). "Disability" means: (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1).

Rodriguez admits that "the Complaint contains no factual allegations about Mr. Rodriguez's specific disability." (ECF No. 15 at 22.) He argues, however, that because he has alleged that CP Development retaliated against by trying to get him to resign his employment, he was "regarded as" having a disability. This is unpersuasive. Indeed, as Defendants argue, not only is the alleged disability unspecified, but in addition, Rodriguez does not allege how, if at all, the allegedly perceived disability had any role in his termination.

Moreover, Rodriguez's allegations regarding this claim are inconsistent. He appears to be arguing that, in retaliation for complaining about unequal pay, he was unfairly directed to complete tasks on his own and CP Development refused his requests for assistance in order to force him to retire or resign. *See* Compl. ¶ 33. But the fact that he could not complete these more arduous tasks without assistance, standing alone, does not state a claim that he was disabled or that his employer regarded his as disabled.

On the other hand, Rodriguez also alleges that he presented CP Development with a doctor's note "based upon his multiple medical conditions and included a limitation on lifting note" but was told that he would have to handle heavy lifting by himself (Compl. ¶¶ 33-34). He

also pleads that he was provided with a list of "essential functions" of his job which were not identified when he applied for the job or before he presented the note from his doctor. (*id.* ¶ 36 & Ex. A). While these allegations may be suggestive of a claim for failure to accommodate, they are insufficient to do so given the inconsistent and frequently contradictory allegations in the Complaint.

Therefore, with respect to Count Five, the motion to dismiss will be granted without prejudice for Rodriguez to amend his ADA claim as it is not certain that amendment would be futile.

### G.  OWBPA Claim

Defendants contend that Rodriguez's claim under the OWBPA in Count Six must be dismissed because the OWBPA does not create an independent cause of action, but at any rate, it does not apply to the facts of this case.

In 1990, Congress amended the ADEA by enacting the OWBPA, 29 U.S.C. § 626(f). The OWBPA is "designed to protect the rights and benefits of older workers" and "governs the effect under federal law of waivers or releases on ADEA claims." *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427 (1998). Specifically, the OWBPA prohibits employers from extracting ADEA waivers from their employees unless such waivers are "knowing and voluntary." 29 U.S.C. § 626(f)(1). One attribute required for a knowing and voluntary waiver is that the employee be provided "a period of at least 45 days within which to consider the agreement." *Id.* § 626(f)(1)(F)(ii).

Although the Court of Appeals has not addressed the issue, numerous district courts have "concluded that the OWBPA's waiver requirements do not create an independent cause of action." *Baker v. Washington Group Int'l, Inc.*, 2008 WL 351396, at *2 (M.D. Pa. Feb.7, 2008)

(collecting cases finding that OWBPA's waiver requirements do not create an independent cause of action). Courts have held that "the OWBPA simply determines whether an employee has, as a matter of law, waived the right to bring a separate and distinct ADEA claim. The OWBPA does not, by itself, determine in the first instance whether age discrimination has occurred." *Whitehead v. Oklahoma Gas & Elec. Co.*, 187 F.3d 1184, 1192 (10th Cir. 1999).

More to the point, Rodriguez does not allege that he signed a waiver nor do Defendants contend that he waived or released his age discrimination claim. Rodriguez's novel theory that because CP Development retaliated against him for his refusal to drop his charge of discrimination, he has stated a "corollary claim addressing misconduct associated with ADEA settlement negotiations" (ECF No. 15 at 24) is both unsupported and unpersuasive. Thus, because amendment would be futile, Count Six will be dismissed with prejudice.

H.  Claims Against the Individual Defendants.

As best as can be determined, Rodriguez has asserted claims against Lynch and Polansky only in Counts One and Seven.[13] Count I has been addressed in this opinion. In Count Seven, Rodriguez alleges that both of these defendants violated the PHRA. Defendants make two arguments in their motion to dismiss:  first, that Rodriguez did not name Lynch and Polansky in his charges and second, that Rodriguez failed to exhaust his remedies under the PHRA. Pennsylvania law requires a plaintiff to exhaust remedies under the PHRA before filing a civil action. 43 P.S. § 962(c)(1); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997).

In his first charge of discrimination (ECF No. 9 Ex. A at 2-3), Rodriguez cited the pay differential as the basis for his charge. He states, among other things, that after he brought his

---

[13]  Other than Count Seven, Count One is the only claim that references the individual defendants. All other counts only refer to alleged conduct of the "Employer" or the singular use of "Defendant."  Therefore, the Court assumes that Counts Two through Six are only against CP Development.

pay disparity to the attention of "management," he spoke with his supervisor and "Human Resources representative Jim Polanski [sic]," who offered him a raise, albeit less than what other employees were receiving. (*Id.* at 2.) Lynch is not mentioned at all in the first charge. In the second charge, Polansky is named on the front page of the charge. The conduct of both Polansky and Lynch is referenced multiple times in the "Continuation of Particulars of New Charge," which is specifically referred to as an "additional statement" that is attached to the charge of discrimination.

A PHRA action ordinarily may be brought only against a party named in a PHRC charge. 43 P.S. § 959(a).[14] The PHRA requires a complainant to file a charge and "state the name and address of the person, employer, labor organization or employment agency alleged to have committed the unlawful discriminatory practice complained of." 43 P.S. § 959(a). Rodriguez correctly contends, however, that a party need not be named in the caption so long as he is named in the body of the charge. *See Zurchin v. Ambridge Area Sch. Dist.*, 300 F. Supp. 3d 681, 688 (W.D. Pa. 2018); *Hitchens v. Greater Pittsburgh Cmty. Food Bank*, 2006 WL 3051901, at *3 (W.D. Pa. Oct. 23, 2006); *Zarazed v. Spar Mgmt. Servs., Inc.*, 2006 WL 224050, at *6 (E.D. Pa. Jan. 27, 2006).

Moreover, a plaintiff may proceed against a party not named in the administrative complaint "when the unnamed party received notice and when there is a shared commonality of interest with the named party." *Schafer v. Board of Public Educ.*, 903 F.2d 243, 252 (3d Cir. 1990). In determining whether there is a commonality of interests, courts consider:

---

[14] Although the PHRA does not impose Title VII's requirement that a civil action be brought only "against the respondent named in the complaint," 42 U.S.C. § 2000e-5(f)(1), courts have interpreted the PHRA consistently with the procedural requirement of Title VII. *See Glickstein v. Neshaminy School Dist.*, 1997 WL 660636, at *10 (E.D. Pa. Oct. 22, 1997).

(1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; (2) whether, under the circumstances, the interests of a named (party) are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Glus v. G.C. Murphy Co.*, 629 F.2d 248, 251 (3d Cir. 1980).

Clearly, Lynch is not identified in the first charge, and based on the description in the charge by Rodriguez, there is no basis to conclude that he claimed that Lynch engaged in any conduct related to the hourly wages of Rodriguez or that Lynch or CP Development would have been placed on notice that his conduct was implicated. While Rodriguez contends that "full EEOC file" includes references to Lynch, he cites no authority to support an argument that he has exhausted his administrative remedies as to Lynch in connection with the first EEOC charge.

By contrast, the second charge extensively references both defendants in the "additional statement." Their conduct is clearly central to the basis of the charge and placed them on notice of the nature of the claim against them. Any suggestion that the omission of Lynch from the first page of the charge is fatal to the claim against him in Count Seven is unavailing.

Thus, Rodriguez named Polansky in both charges and Lynch in the second charge. To the extent that Rodriguez bases his claim against Lynch on the first charge, however, he has failed to exhaust his administrative remedies and cannot maintain a claim against Lynch on matters related to the first charge.

Pennsylvania law requires a plaintiff to exhaust remedies under the PHRA before filing a civil action. 43 P.S. § 962(c)(1); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997). Once a complainant files a charge under the PHRA, he must adhere to the mandatory

22

administrative procedure. *Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917, 921 (Pa. 1989). A complainant may not file an action until the PHRC dismisses the complaint or enters a conciliation agreement. If the PHRC does not resolve the complaint within a year, the complainant may file a civil action. *See Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 471 (3d Cir. 2001). The failure to exhaust the administrative process requires dismissal of a PHRA claim. *Id.* at 922-23.[15]

Rodriguez dual-filed his claim with both the EEOC and the PHRC. Defendants contend that thereafter, this action was commenced prematurely because Rodriguez did not exhaust the PHRC's administrative process.

Rodriguez counters that Defendants have failed to account for the work-sharing agreement between the EEOC and the PHRC. Workshare agreements provide that the local or state agency waives its right to initially review claims first filed with the EEOC. *Woodson*, 109 F.3d at 925-26. The agreements operate to "terminate" PHRC proceedings that are initially filed with the EEOC, allowing a complainant to proceed immediately under Title VII without first filing with the PHRC. *Id.* (citing *Trevino-Barton v. Pittsburgh Nat'l Bank*, 919 F.2d 874, 879 (3d Cir. 1990)); *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107 (1988) ("a state agency's waiver of the 60-day deferral period, pursuant to a worksharing agreement with the EEOC, constitutes a 'termination' of its proceedings so as to permit the EEOC to deem a charge filed and to begin to process it immediately.").

---

[15] In *Fort Bend County, Texas v. Davis*, 139 S. Ct. 1843 (2019), the Supreme Court held that Title VII's charge-filing requirement was not jurisdictional. This case does not hold that the Court must await the submission of the full EEOC file as Rodriguez contends, however. *See Wilson v. MVM, Inc.*, 475 F.3d 166 (3d Cir. 2007) (even complete failure to exhaust is not a jurisdictional bar, but the plaintiffs failed to demonstrate futility, so they had no excuse from fulfilling the requirement). Moreover, Defendants have raised Rodriguez's failure to exhaust with respect to the PHRA, a Pennsylvania state law with its own requirements.

Although dual filing satisfies the filing requirement under the PHRA, it does not excuse a complainant from pursuing the PHRA's administrative process, however. *See DeAngelo v. DentalEZ, Inc.*, 738 F. Supp. 2d 572, 587-88 (E.D. Pa. 2010) (after filing with both the EEOC and the PHRC, plaintiff who requested right to sue letter from EEOC and commenced action in federal court prior to one-year mark foreclosed chances of allowing state agency to resolve action through PHRA's administrative process); *see also Flowers v. Univ. of Pa. Health Sys.*, 2009 WL 1688461 (E.D. Pa. 2009); *Lyons v. Springhouse Corp.*, 1993 WL 69515 (E.D. Pa. 1993).

Rodriguez relies on *Simon v. IPS-Integrated Project Services, LLC*, 2018 WL 3585137 (E.D. Pa. 2018), to suggest that was not required to wait for the PHRC to complete its administrative process. In *Simon*, the court found that even though the plaintiff initiated the action prior to the one-year mark, Simon had not requested a right to sue letter and the EEOC had concluded its own investigation. *Id.* at *4. Simon also subsequently filed an amended complaint after the one-year mark, thereby mooting the issue. *Id.* Unlike the plaintiff in *Simon*, however, Rodriguez requested a right to sue letter from the EEOC within a year of his second charge on July 15, 2020. Further, he does not allege that the PHRC has acted on or resolved the complaint. *See also Rizzotto v. Quad Learning, Inc.*, 2019 WL 2766588, at *3 n.5 (E.D. Pa. June 28, 2019) (concluding that the *Simon* court erred to the extent it held that the exhaustion requirement of the PHRA could be satisfied where the plaintiff dual-filed with the EEOC).

Simply put, Rodriguez has failed to exhaust his PHRA remedies. Given that he will be granted leave to amend his Complaint, however, any amendment he chooses to file will be later than one year from the filing date of the second charge. Thus, he can cure this deficiency. *See also Szurgyjlo v. Sourceone Pharmacy Servs., LLC*, 2020 WL 7249095, at *3 (E.D. Pa. Dec. 9,

2020); *Jones v. Delaware River Stevedores, Inc.*, 2019 WL 498517, at *3 (E.D. Pa. Feb. 7, 2019). In the event that the PHRC has not acted on or resolved the charge, amendment would not be futile.

**IV.**   <u>**Conclusion**</u>

For these reasons, Defendants' motion will be granted with prejudice with respect to Count Six and without prejudice with leave to amend as to Counts One, Four and Five. As to Count Seven, Rodriguez's claim against Defendant Lynch based upon the first charge of discrimination will be dismissed with prejudice. Defendants' motion to dismiss the remaining claims in Count Seven is granted without prejudice and with leave to amend. Defendants' motion to dismiss Counts Two and Three will be denied.

An appropriate order follows.

Dated: July 19, 2021                                  /s/Patricia L. Dodge
                                                      PATRICIA L. DODGE
                                                      United States Magistrate Judge